RECEIVED
IN LAKE CHARLES, LA

JUL 21 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BASF AGROCHEMICAL PRODUCTS B.V. AND BASF CORPORATION | : | DOCKET NO. 2:05 CV 1478 |
| VS. | : | JUDGE MINALDI |
| MICHAEL T. UNKEL, MICHAEL W. UNKEL, KINDER CANAL COMPANY, INC. AND KENNETH McCOWEN | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Presently before the court is a Motion for Summary Judgment [doc. 133] filed by Michael T. Unkel. Michael T. Unkel avers that the only colorable claim pleaded against him is that he violated a contract with the plaintiff, which is a state law claim[1], and he seeks summary judgment on this issue.

Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the

---

[1] Governed, under the terms of the Agreement, by North Carolina law.

burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[2] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

## STATEMENT OF MATERIAL FACTS

Michael T. Unkel submits that the plaintiffs have offered only two documents to support their contract claim against him. The first document, marked as Exhibit 21, is dated June 28, 2004.

---

[2] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

Michael T. Unkel testified that the "Grower Signature" "appears to be a forgery." The second document, marked as Exhibit 22, was signed by Michael T. Unkel on June 27, 2005. Unkel testified that the CLEARFIELD rice planted in 2005 was purchased and planted in March. The Stewardship Agreement was signed in late May or early June 2005. Michael T. Unkel testified that the first time that he ever saw such an Agreement was in June 2005 when it was presented to him while he was in the field working. (See *Transcript*, November 16, 2005, at p. 89, line 19-20; p. 91, line 17, 18-25; p. 92, lines 3-7, 15-18; p. 99 lines 11-13; p. 113, lines 8-13; p. 114, lines 4-19.)

BASF asserts that the claim for breach of contract against Michael T. Unkel is based on the following material facts:

BASF alleges that Michael T. Unkel attended at least one seminar put on by BASF regarding CLEARFIELD rice and the BASF Stewardship Program for CLEARFIELD rice in 2003. (Deposition of James T. Manuel, dated April 3, 2006, pp. 12 13.)[3] During those programs, the BASF representative discussed in detail the BASF Stewardship program, including (a) the obligation to sign a Stewardship Agreement if a grower wants to buy and farm CLEARFIELD rice and (b) the prohibition against saving seed for replanting. (Manuel Depo., pp. 14-15.) Michael T. Unkel was allegedly observed arguing with representatives of BASF concerning the restriction on saving seed. (Manuel Depo., pp. 14-15.)

In November 2003, Michael T. Unkel signed a "Retailer Authorization Agreement for CLEARFIELD Seed Rice." (Plaintiffs' Exhibit 44.) This Retailer Authorization Agreement was signed by Michael T. Unkel as the president of Kinder Canal Company, d/b/a Kinder Farm Supply. (Plaintiffs' Exhibit 44.) The Retailer Authorization Agreement was with Horizon Ag, which is a

---

[3] Relevant pages of the Manuel Depo. are attached hereto as Exhibit A.

3

sublicensee of BASF to grow and distribute CLEARFIELD rice seed. (*See* Plaintiffs' Exhibit 61.)

The 2003 Retailer Agreement signed by Michael T. Unkel required, among other things, that Michael T. Unkel's company:

- "Actively support [CLEARFIELD] seed rice technology . . ."
- "Not handle, provide seed treatment or clean/process any patented or PVP seed . . ."
- "Actively participate in the prevention and reporting of seed piracy"
- "give his best efforts to prevent access by persons not authorized by Horizon to the Certified Seed."

(Exhibit 44.)

During the hearing on Plaintiffs' Motion for Preliminary Injunction, Michael T. Unkel attempted to establish nescience of the CLEARFIELD rice technology and the BASF Stewardship program by claiming that he did not read Exhibit 44. However, Don Charles Wilhelmi, Michael T. Unkel's nephew and the manager of Kinder Farm Supply at the time, has testified that he saw Michael T. Unkel read Exhibit 44 before signing it. (Deposition of Don Charles Wilhelmi, dated April 3, 2006, pp. 84-85)[4] ("Wilhelmi Depo. I").

On or about January 19, 2004, Michael T. Unkel telephoned Agro Distribution, L.L.C. ("Agro") to reserve 80 cwt of CLEARFIELD rice seed CL-161. (*See* Declaration of Russell Walker of Agro Distribution, L.L.C. ("Walker Decl."), ¶ 5; Plaintiffs' Exhibit 37).

On or about February 16, 2004, Michael T. Unkel signed an "Annual Retailer License Agreement CLEARFIELD Rice" for 2004. (Plaintiffs' Exhibit 48.) This agreement renews the Retailer Agreement signed by Michael T. Unkel on November 20, 2003. (Plaintiffs' Exhibit 44.)

---

[4] Relevant pages of the Wilhelmi Depo. I are attached hereto as Exhibit B.

Don Charles Wilhelmi again has testified that he saw Michael T. Unkel read Exhibit 48 before signing it. (Wilhelmi Depo. I, pp. 84-85.)

In addition, Mr. Wilhelmi testified that, as an authorized retailer of CLEARFIELD rice seed, Kinder Canal Company, d/b/a Kinder Farm Supply, prominently displayed on its retail counter information regarding the CLEARFIELD Rice Stewardship Program. (Deposition of Don Charles Wilhelmi, dated April 4, 2006 ("Wilhelmi Depo. II"), pp. 42-46.)[5] In particular, Mr. Wilhelmi testified that documents entitled Stewardship Guide - BASF and CLEARFIELD Rice Seed Piracy Q & A were placed on the counter at Kinder Farm Supply. (*See* Plaintiffs' Exhibits 62 and 63.) Mr. Wilhelmi also testified that Michael T. Unkel, as the president of Kinder Canal, was in the store once or twice a week. (Wilhelmi Depo. II, p. 43.)

On or about March 19, 2004, Michael T. Unkel called Agro to order 80 cwt of CLEARFIELD rice Cl-161 seed. (Walker Decl., ¶ 6.) The order was invoiced to Michael T. Unkel and, at Michael T. Unkel's instructions, the rice seed was delivered directly to Deepsouth Airstrip. (Walker Decl., ¶ 6; Plaintiffs' Exhibit 38.)

The 80 cwt of CLEARFIELD rice Cl0161 seed purchased by Michael T. Unkel in 2004 would plant 80 acres of rice, based on a seeding rate of 100 pounds per acre, which is the rate Michael T. Unkel testified he used. (Transcript of Proceedings, dated November 16, 2005, pp. 112, 130;[6] *see also* Exhibits 21 and 22 showing a seeding rate of 100 pounds per acre.)

In 2004, Michael T. Unkel purchased 13 gallons of NewPath chemical. (Plaintiffs' Exhibits

---

[5] Relevant pages of the Wilhelmi Depo. II are attached hereto as Exhibit C.

[6] Relevant pages of the Transcript of Proceedings, dated November 16, 2005 are attached hereto as Exhibit E.

64-65.) As testified by Dr. Guy Zummo of BASF during the hearing on Plaintiffs' Motion for Preliminary Injunction, NewPath is an herbicide that is marketed and sold for the sole purpose of treating CLEARFIELD rice. (Transcript of Proceedings, dated November 15, 2005, pp. 61-62.) The recommended application rate for NewPath is two applications of 4 ounces per acre. (*Id.*) Using that recommended application rate, the 13 gallons will treat 208 acres. Michael T. Unkel testified that he farmed 190 acres of CLEARFIELD rice in 2004 although he only purchased enough certified CLEARFIELD rice seed to plant 80 acres. (Transcript of Proceedings, dated November 16, 2005, pp. 83; Plaintiffs' Exhibit 38.)

On or above June 28, 2004, Russell Walker of Agro telephoned Michael T. Unkel and advised him that he needed to sign the BASF Stewardship Agreement for 2004. (Walker Decl., ¶ 7.) Because Michael T. Unkel had placed his order by telephone and the seed was delivered to Deepsouth, Michael T. Unkel was not previously presented with a copy of the Stewardship Agreement. (*Id.*) During that telephone conversation, Mr. Walker explained to Michael T. Unkel that the Stewardship Agreement was the same agreement that was presented at the meeting in Iowa, Louisiana in 2003 and that it required him to abide by the BASF Stewardship program, including not saving seed. (*Id.*) Michael T. Unkel stated that he understood and agreed with the requirements, but stated that he was not in the area. He, therefore, asked Mr. Walker to sign the Stewardship Agreement for him. (*Id.*) A copy of the Stewardship Agreement that was purportedly discussed with Michael T. Unkel and signed with his authority is attached hereto as Exhibit 21. (*Id.*)

The 2004 Stewardship Agreement provides in relevant part that the signatory agreed:

- "To use the seed containing CLEARFIELD technologies solely for planting a single commercial crop."

6

- "To not supply this seed to any other person or entity for planting, and to not save any crop produced from this seed for replanting, or supply seed produced from this seed to anyone for replanting."

- "To purchase varietal rice seed containing CLEARFIELD technology only from a Horizon Ag L.L.C. authorized CLEARFIELD rice seed retailer."

The 2004 Stewardship Agreement provides that the Agreement covers the entire 2004 growing season. (Plaintiffs' Exhibit 21.)

At the time that Michael T. Unkel agreed to and accepted the terms of the 2004 Stewardship Agreement, he did not disclose that he had planted unauthorized CLEARFIELD rice seed. (Walker Decl., ¶ 11.)

On or about March 7, 2005, Michael T. Unkel reserved by telephone 75 cwt of CLEARFIELD rice CL-161 seed for the 2005 growing season. (Walker Decl., ¶ 8; Plaintiffs' Exhibit 39.)

On or about March 24, 2005, Michael T. Unkel ordered by telephone 60 cwt of CLEARFIELD rice CL-161 seed. Again, at Michael T. Unkel's instructions, the rice seed was delivered directly to Deepsouth Airstrip. (Walker Decl., ¶ 9; Plaintiffs' Exhibit 52.)

Because Michael T. Unkel's 2005 order for CLEARFIELD rice CL-161 seed was made by telephone and the seed was delivered to Deepsouth, Michael T. Unkel was subsequently asked to sign the Stewardship Agreement. (Walker Decl., ¶ 10; Declaration of Jude A. Doise ("Doise Decl."), ¶¶ 4-6.) In particular, in June 2005, Mr. Jude Doise of Agro telephoned Michael T. Unkel and made arrangements to meet Michael T. Unkel at one of his rice fields near Kinder to review and sign the 2005 Stewardship Agreement. (Walker Decl., ¶ 10; Doise Decl., ¶ 6.) On or about June 27, 2005,

Mr. Doise drove to Michael T. Unkel's field, and Michael T. Unkel met him at the field road. The 2005 BASF Stewardship Agreement was presented to Michael T. Unkel, who seemed very familiar with the Agreement and the stewardship program, and signed the agreement without hesitation or objection. (Doise Decl., ¶ 6.)

The 2005 Stewardship Agreement provides that the Agreement covers "the entire 2005 growing season." (Plaintiffs' Exhibit 22.)

Neither prior to, nor at the time that Michael T. Unkel signed the 2005 Stewardship Agreement, did he disclose that he had planted non-certified CLEARFIELD rice seed that he obtained from his son, Michael W. Unkel. (Doise Decl., ¶ 7.)

During the hearing on Plaintiff's Motion for Preliminary Injunction, Michael T. Unkel admitted that in 2005 he planted approximately 7,000 pounds of non-certified CLEARFIELD rice seed that he obtained from his son, Michael W. Unkel. (Transcript of Proceedings, dated November 16, 2005, pp. 90-91; 96-97; 129-30.)

Michael T. Unkel also testified that he knew in 2004 that his son, Michael W. Unkel, farmed CLEARFIELD rice and that Michael W. Unkel had saved seed for replanting. (Transcript of Proceedings, dated November 16, 2005, pp. 88-91.) In fact, Michael T. Unkel, planted some of Michael W. Unkel's saved seed in 2005. (*Id.*) Michael T. Unkel also testified that he paid for various chemicals, including NewPath, which were used to treat Michael W. Unkel's unauthorized CLEARFIELD rice crop, and even harvested Michael W. Unkel's unauthorized CLEARFIELD rice. (*Id.*, p. 130.)

Analysis

Michael T. Unkel states that by signing the 2005 Stewardship Agreement, he agreed to use

8

the seed containing CLEARFIELD technologies solely for planting a single commercial crop and there is no evidence of a violation since he signed the Agreement in June of 2005. Additionally, the 2005 CLEARFIELD rice has been subject to a TRO since August of 2005. It is Michael T. Unkel's position that since this crop was planted in March, 2005, the terms of the June 2005 Agreement are not applicable to the March crop. Therefore, Unkel argues that there is no genuine issue of material fact that Michael T. Unkel did not breach the June 2005 Agreement.

Unkel alleges that the signature on the 2004 Stewardship Agreement "appears to be a forgery." BASF alleges that the 2004 Stewardship Agreement was signed by Russell Walker of Agro, for, on behalf of and with the authorization of Michael T. Unkel. (Walker Decl. ¶7). BASF avers that, prior to authorizing Mr. Walker to sign the 2004 Stewardship Agreement, Michael T. Unkel was fully aware of the terms of the stewardship program as he had attended at least one seminar and had reviewed other agreements prior to that time. He was also the President of Kinder Canal Company which prominently displayed the Stewardship Guidelines and Q&A's on CLEARFIELD rice piracy. (Wilhelmi Depo. II, pp. 42-46; Plaintiffs' exhibits 62-63.) Unkel indicated to Mr. Walker that he was familiar with and agreed to the requirements of the Stewardship Agreement before authorizing Mr. Walker to sign on his behalf. (Walker decl. ¶7).

BASF asserts that the 2004 Agreement was signed with Michael T. Unkel's consent and that the 2005 Agreement covered the entire 2005 growing season. Therefore, he agreed to abide by the terms and conditions set forth in those agreements.

There is a genuine issue of material fact concerning whether Michael T. Unkel authorized the 2004 agreement and whether he accepted the terms of that Agreement.

There is a genuine issue of material fact concerning whether Michael T. Unkel violated the

2005 Agreement by planting and harvesting CLEARFIELD rice that had been saved by Michael W. Unkel,[7] whether Michael T. Unkel violated the 2004 Agreement by planting and harvesting non-certified CLEARFIELD rice,[8] and by his actively assisting Michael W. Unkel in treating and harvesting unauthorized CLEARFIELD rice.[9]

Michael T. Unkel signed the 2005 Stewardship Agreement on June 27, 2005. The Agreement states that it is in effect until December 31, 2005 and covers "the 2005 season."[10] BASF argues that this bound Michael T. Unkel to abide by the Agreement's terms for all of 2005, not just from the date that it was signed. BASF also asserts that there were two unauthorized harvests of CLEARFIELD rice by Michael T. Unkel after the Agreement was signed. This also constitutes a genuine issue of material fact sufficient to defeat summary judgment.

Michael T. Unkel has not met his burden of showing that there is no genuine issue of material fact. Accordingly, summary judgment on the state law claim will be denied.

Lake Charles, Louisiana, this 21 day of July, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT COURT

---

[7] Transcript of proceedings November 16, 2005, pp. 90-91; 96-97; 129-30.

[8] Transcript of proceedings November 16, 2005, pp. 83.

[9] Transcript of proceedings November 16, 2005, pp. 88-91; 129-130.

[10] The "2005 season" is not specifically defined within the agreement.