
RECEIVED
IN LAKE CHARLES, LA
JUL 25 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **BASF AGROCHEMICAL PRODUCTS B.V. AND BASF CORPORATION; THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE; and MGI PHARM, INC. (*involuntary plaintiff*)** | : | **DOCKET NO. 2:05 CV 1478** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL T. UNKEL, MICHAEL W. UNKEL, KINDER CANAL COMPANY, INC. AND KENNETH MCCOWN** | : | **MAGISTRATE JUDGE WILSON** |

**MEMORANDUM RULING**

Presently before the court is a Motion for Summary Judgment on the 2004 Claims [doc. 148] filed by the defendants. This motion has been opposed by the plaintiffs. The defendants are seeking summary judgment on the portion of the plaintiffs' claim for infringement of the Plant Variety Protection Act ("PVPA") Certificate No. 200200198 which occurred prior to March 11, 2005, the date that the Certificate was issued for CLEARFIELD rice variety CL161.

Summary Judgment Standard

The defendants are seeking a partial summary judgment on claims arising prior to March 11, 2005. Although the plaintiffs argue that the defendants are not entitled to a summary judgment on only a portion of their claim, this argument is not persuasive. A partial summary judgment is

available to a party and a summary judgment standard is applied.[1]

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[2] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is

---

[1] *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 879 (C.A.5 (Tex.), 2004).

[2] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248,106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

Facts

The plaintiffs allege that the defendants infringed one or more of the PVPA Certificates for CLEARFIELD rice, namely PVPA Certificates 200100106, 200100107, and 200200198. Since the evidence in this case to date is that the rice that was planted and harvested by the defendants was CL161, Certificate 200200198, is the PVPA Certificate applicable to this motion.

The defendant, Michael W. Unkel, admitted that he planted, cultivated and harvested CL161 CLEARFIELD rice in 2003, 2004 and 2005.[3]

Defendant Michael T. Unkel admitted that in 2005 he planted approximately 7,000 pounds of non-certified CL 161 variety CLEARFIELD rice seed that he obtained from his son, Michael W. Unkel.[4]

The PVPA Certificate for CL161 variety rice is Certificate NO. 200200198. The date of the application for this certificate was June 26, 2002. The certificate was issued March 11, 2005.

---

[3] Transcript of Proceedings before this court, dated November 16, 2006, pp. 18-20.

[4] Transcript of Proceedings, dated November 16, 2006, pp. 90-91; 96-97; 129-130.

Mr. Don Fontenot[5] testified that the super bags of seed that were delivered to the airstrips in 2004 and 2005 did not contain the words "Unauthorized seed multiplication prohibited" or "Unauthorized Propagation Prohibited."[6]

The plaintiffs assert that the labels used for CLEARFIELD rice seed include language indicating that the seed is protected.[7] The labels include language stating "Unauthorized Propagation Prohibited," "Unauthorized Seed Multiplication and/or Exportation Prohibited," and "progeny seed and derivatives may not be saved for propagation in a subsequent season, nor sold for propagation by others, nor otherwise transferred without written permission from the patentee or its authorized licensee."[8]

Michael W. Unkel obtained CLEARFIELD rice seed from or through James T. Manuel in 2003. Michael W. Unkel subsequently planted and harvested the rice.[9] Michael W. Unkel also testified that he saved the unauthorized seed from 2003 and planted it in 2004.[10]

The plaintiffs contend that prior to the issuance of the PVPA Certificate No. 200200198, the defendants had actual notice or knowledge that propagation of CLEARFIELD rice was prohibited

---

[5] The defendants included pp. 25-28 of Mr. Fontenot's deposition, but did not identify Mr. Fontenot or the basis of his knowledge.

[6] The defendants argue that this wording is required by statute. This argument will be addressed hereinafter.

[7] Declaration of Randy Ouzts, General Manager for Horizon Ag, LLC, ¶¶3-4, Plaintiffs exhibits C-H.

[8] Declaration of Randy Ouzts, ¶¶ 3-4, Declaration of Randy Ouzts, General Manager for Horizon Ag, LLC, ¶¶3-4, Plaintiffs exhibits C-H.

[9] Transcript of Proceedings, dated November 16, 2006, p. 20.

[10] *Id.*, at pp. 18-20.

and/or that the variety was protected. The rice delivered to Michael W. Unkel on April 27, 2003 was delivered in bulk bags. The labels on these bags contained language that CLEARFIELD rice was covered by United States patents.[11] Labels used on all bulk bags from 2002 through the present contain the following language: "Progeny seed may be sold as a commodity. However progeny seed and derivatives may not be saved for propagation by others, nor otherwise transferred without written permission from patentee or its authorized licensee."[12]

BASF contends, in 2003, that Michael T. Unkel attended at least one seminar by BASF regarding CLEARFIELD rice and the BASF Stewardship Program.[13] During that seminar a BASF representative discussed in detail the Stewardship Program, including (a) the obligation to sign a Stewardship Agreement if a grower wants to buy and farm CLEARFIELD rice and (b) the prohibition against saving seed for replanting.[14]

In November 2003, Michael T. Unkel signed a "Retailer Authorization Agreement for Clearfield Seed Rice."[15] This Agreement was signed by Michael T. Unkel as the President of Kinder Canal Company, d/b/a Kinder Farm Supply, and was with Horizon Ag, a sublicensee of BASF. The Agreement signed by Michael T. Unkel required, among other things, that Kinder Canal Company:

- Actively support [CLEARFIELD] seed rice technology;

---

[11] Ouzts Decl. ¶4 and Plaintiffs exh. H.

[12] *Id.*

[13] Manuel depo., pp. 12-13.

[14] *Id.*, pp. 14-15.

[15] Plaintiffs' exh. 44.

- Not handle, provide seed treatment or clean/process any patented or PVPA seed;
- Actively participate in the prevention and reporting of seed piracy; and
- Give his best efforts to prevent access by persons not authorized by Horizon to the Certified Seed.

Don Charles Wilhelmi, Michael T. Unkel's nephew and the manager of Kinder Farm Supply at the time, testified that he saw Michael T. Unkel read the Agreement before he signed it.[16]

On or about February 16, 2004, Michael T. Unkel signed an "Annual Retailer License Agreement" for 2004.[17] This Agreement renews the Retailer Agreement signed by Michael T. Unkel on November 20, 2003. Mr. Wilhelmi again testified that he saw Michael T. Unkel read the Agreement before signing.[18]

Mr. Wilhelmi testified that, as an authorized retailer of CLEARFIELD rice seed, Kinder Canal Company d/b/a Kinder Farm Supply, prominently displayed information regarding the CLEARFIELD rice Stewardship Program on its retail counter and both Michael T. Unkel and Michael W. Unkel were in the store once or twice a week.[19]

BASF asserts that the 2004 Stewardship Agreement was signed on behalf of Michael T. Unkel with his authority.[20] This agreement provides:

- To use seed containing CLEARFIELD technologies solely for planting a single

---

[16] Wilhelmi Depo.I, pp. 84-85.

[17] Plaintiffs' exh. 48.

[18] Wilhelmi Depo.I, pp. 84-85.

[19] Wilhelmi Depo.II, pp. 42-46.

[20] Decl. of Russell Walker, filed as doc. 163.

commercial crop;

- to not supply any of this seed to any other person or entity for planting, and to not save any crop produced from this seed to anyone for replanting.
- To purchase varietal rice seed containing CLEARFIELD technology only from a Horizon Ag L.L.C. authorized CLEARFIELD rice seed retailer.

The 2004 Stewardship Agreement provides that the Agreement covers the entire 2004 growing season.[21]

Michael T. Unkel admitted that in 2005 he planted approximately 7,000 pounds of non-certified CLEARFIELD rice seed that he obtained from his son, Michael W. Unkel.[22]

Analysis

The defendants seek summary judgment on alleged acts of infringement that occurred prior to March 11, 2005 and the issuance of PVPA Certificate 200200198. The defendants assert that the plaintiffs did not properly label the bags of CLEARFIELD seed and they are therefore not entitled to damages for this period of time. This argument is not supported by law.

7 U.S.C. § 2564(d) states:

> As to infringement prior to, or resulting from a planting prior to, issuance of a certificate for the infringed variety, a court finding the infringer to have established innocent intentions, shall have discretion as to awarding damages.

This provision indicates that an award of damages based upon actions prior to the issuance of the PVPA certificate is permitted, but such award is impacted by a finding that the infringer had innocent intentions.

The defendants have not asserted, nor have they produced any evidence, that their intentions were innocent. The plaintiffs argue that the evidence, presented in a light most favorable to the

---

[21] Plaintiffs' exh. 21.

[22] Transcript of Proceedings dated November 16, 2005, pp. 90-91; 96-97; 129-130.

plaintiffs, demonstrates that the defendants' actions were anything but innocent. Uncontroverted summary judgment evidence demonstrates that the defendants attended seminars sponsored by BASF and agreed to have Kinder Canal Company serve as a retailer of CLEARFIELD rice seed and to act as a steward of the technology.[23] Documents were posted in the store which described the PVPA and patent protection. These notices stated that the seed could not be saved or propagated.

The defendants further argue that the plaintiffs cannot recover damages for infringement prior to the issuance of Certificate 200200198 because 7 U.S.C. §2567 requires that the seed bags be marked with the words "Unauthorized seed multiplication prohibited" or "Unauthorized Propagation Prohibited."

§127 of the PVPA, 7 U.S.C. §2567 states:

**§ 2567. Limitation of damages; marking and notice**

> Owners ***may*** give notice to the public by physically associating with or affixing to the container of seed of a variety or by fixing to the variety, a label containing either the words "Unauthorized Propagation Prohibited" or the words "Unauthorized Seed Multiplication Prohibited" and after the certificate issues, such additional words as "U.S. Protected Variety". In the event the variety is distributed by authorization of the owner and is received by the infringer without such marking, no damages shall be recovered against such infringer by the owner in any action for infringement, unless the infringer has actual notice or knowledge that propagation is prohibited or that the variety is a protected variety, in which event damages may be recovered only for infringement occurring after such notice. As to both damages and injunction, a court shall have discretion to be lenient as to disposal of materials acquired in good faith by acts prior to such notice. (Emphasis added).

7 U.S.C.A. § 2567

Under 7 U.S.C. § 2567, certificate owners receive damages only if "the infringer has actual notice or knowledge that propagation is prohibited or that the variety is a protected variety." Owners

---

23 Manuel depo. pp. 12-13.

*may* give this notice by affixing "Unauthorized Propagation Prohibited" or "Unauthorized Multiplication Prohibited" to the variety label. 7 U.S.C. § 2567. The defendants introduced portions of a deposition by Don Fontenot in which he stated that the seed bags did not contain the words "Unauthorized seed multiplication prohibited" or "Unauthorized Propagation Prohibited." The statute uses the permissive "may" rather than the mandatory "shall." The statute, by using this permissive language, indicates that failure to include the specified language will not foreclose damages. However, a declaration by Randy Ouzts submitted by the plaintiffs indicates that all labels on bulk seed bags from 2002 to present contain the language: "Progeny seed may be sold as a commodity. However progeny seed and derivatives may not be saved for propagation by others, nor otherwise transferred without written permission from patentee or its authorized licensee." There is a genuine issue of material fact regarding whether the defendants had actual notice or knowledge that propagation was prohibited or that the variety was a protected variety. Accordingly, the Motion for Summary Judgment on the 2004 claims will be denied.

Lake Charles, Louisiana, this 24 day of July, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE