RECEIVED
IN LAKE CHARLES, LA

DEC - 7 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| BASF AGROCHEMICAL PRODUCTS, ET AL | : | DOCKET NO. 05 CV 1478 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MICHAEL T. UNKEL, ET AL | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the court is plaintiffs' Motion for Summary Judgment on their First, Second, and Fourth claims for relief as set out in the First Amended Complaint [doc. 188]. The plaintiffs are seeking summary judgment on the following claims: patent infringement (First Claim), Plant Variety Protection Act (PVPA) infringement (Second Claim), and state law conversion (Fourth Claim). This motion is opposed by defendants.[1]

### FACTS

This suit arises out of the alleged unauthorized use of CLEARFIELD rice by the defendants. CLEARFIELD is the trademark used in conjunction with a herbicide tolerant, rice-growing system.[2] The CLEARFIELD technology is covered by three patents owned by MGI Pharma, Inc. ("MGI"),

---

[1] On September 13, 2006 the court granted defendants' Rule 56(f) motion to conduct additional discovery and their motion for leave to supplement their Opposition to Motion for Summary Judgment. On September 14, 2006 defendants filed a supplemental memorandum into the record [doc. 230]. On October 9, 2006, defendants again filed a supplemental memorandum in opposition [doc. 246]. The court will consider the later-filed memorandum as superseding the one filed on September 14.

[2] *See* Complaint ¶ 14.

issued in April 2001, and numbered as follows: 6,211,438 ("the '438 Patent"), 6,211,439 ("the '439 Patent"), and 6,222,100 ("the '100 Patent").[3] Through its purchase of American Cyanamid Company's crop protection business, BASF Agrochemical Products, B.V. and BASF Corporation (collectively "BASF") hold an exclusive license to make, use, and sell the products and methods claimed by the above patents.[4]

One of the varieties of CLEARFIELD rice is known as CL161. Louisiana State University Agricultural Center ("LSU") holds a certificate of protection for the CL161 variety under the Plant Variety Protection Act (PVPA). LSU also holds certificates for the CL121 and CL141 rice varieties.

In addition to the protection offered by the patents and PVPA certificates, CLEARFIELD rice is also subject to a stewardship program run by BASF. The BASF Stewardship Program is meant to ensure that undesirable red rice does not become tolerant of the NEWPATH pesticide used in conjunction with the CLEARFIELD system.[5] In other words, the stewardship program is intended to "protect a rice growers opportunity to selectively control red rice in rice."[6] Farmers who buy and plant CLEARFIELD must therefore sign a Stewardship Agreement which "grants a limited, nonexclusive license to the grower to plant CLEARFIELD rice for a single 'commercial crop' and precludes the grower from supplying any seed to third parties or saving any seed or crop produced

---

[3] *See* Plaintiffs' Exhibits 1-3 (United States Patents) [docs. 188-16 to 188-21].

[4] Plaintiffs' Exhibit 4, ¶¶ 4.1-4.2 (License Agreement) [doc. 188-22] *and* Plaintiffs' Exhibit 54 (Purchase Agreement) [doc. 188-47].

[5] *See* Plaintiffs' Exhibit 62 (Stewardship Guide) [doc. 188-57].

[6] *Id.*

2

from this seed for replanting."[7]

In 2003, Michael W. Unkel ("M.W.") purchased 8,000 pounds of CLEARFIELD CL161 rice seed from James T. Manuel.[8] The seed was purchased with money borrowed from M.W.'s father, Michael T. Unkel ("M.T.").[9] M.W. subsequently planted 80 acres of the seed on farmland owned by Kenneth McCown.[10] Although he was apparently aware of the BASF Stewardship Program, M.W. never signed a Stewardship Agreement.[11] From the 2003 crop, M.W. saved approximately 60,000 pounds of CLEARFIELD.[12]

In 2004, M.W. planted the saved rice seed on approximately 280 acres owned by McCown and 280 acres owned by Kinder Canal Company ("Kinder Canal"), of which M.T. is the president.[13] From the 2004 harvest, M.W. saved approximately 28,000 pounds of CLEARFIELD seed.[14] M.W. planted this seed in 2005 on 265 acres owned by Kinder Canal.[15]

M.T. also farmed CLEARFIELD rice during the years 2004–2005. In 2004, M.T. planted

---

[7] May 18, 2006 Order and Written Reasons 3 [doc. 144].

[8] Transcript of November 16, 2005 Proceedings, p. 20; Plaintiffs' Exhibit B, pp. 10-12 (Deposition of Michael W. Unkel) [doc. 188-7].

[9] M.W. Unkel Depo. 13.

[10] *Id.* at 11.

[11] Plaintiffs' Exhibit E, pp. 43-45 (Deposition of Don Charles Wilhelmi) [doc. 188-10]; May 18, 2006 Order and Written Reasons 6; Nov. 16, 2006 Transcript, p.19.

[12] M.W. Unkel Depo. 18. With crops such as soybean and rice, the crop is also the seed and is can be saved for replanting.

[13] *Id.* at 19; November 16, 2006 Transcript, p. 101.

[14] M.W. Unkel Depo. 20-23.

[15] *Id.* at 24.

approximately 200 acres of CLEARFIELD CL161 rice.[16] Of the rice he planted that year, M.T. purchased 8,000 pounds of seed from Agro Distribution, L.L.C. ("Agro") and obtained the rest from the seed saved and stored by M.W. in 2003.[17] Again in 2005, M.T. planted CLEARFIELD, having purchased some his seed from Agro and taking the rest from the seed saved by M.W. in 2004.[18] In both 2004 and 2005, M.T. signed BASF Stewardship Agreements.[19]

## SUMMARY JUDGMENT STANDARD

Although this case involves claims of patent and PVPA infringement, Fifth Circuit summary judgment standards apply. *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2006) ("This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit.") Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57 (1986). When the nonmoving party has the burden of proof

---

[16] Plaintiffs' Exhibit C, p. 13 (Deposition of Michael T. Unkel) [doc. 188-8].

[17] Plaintiffs' Exhibit 38 (Agriliance Invoice) [doc. 188-42]; M.T. Unkel Depo. 13-15.

[18] M.T. Unkel Depo. 17.

[19] Plaintiffs' Exhibits 21 (2004 Stewardship Agreement) & 22 (2005 Stewardship Agreement). The 2004 Agreement was signed by Russell Walker, an Agro sales representative, on behalf of M.T. and with his knowledge. Plaintiffs' Exhibit F ¶ 7 (Declaration of Russell Walker) [doc. 188-11]. It appears that M.T. signed the 2005 agreement personally. *Id.* at ¶ 10.

on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[20] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. FED.R.CIV.P. 56(e); *see also Topalian*, 954 F.2d at 1131.

## ANALYSIS

### *Patent Infringement*

"A district court should approach a motion for summary judgment on the fact issue of

---

[20] A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see also Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

infringement with great care." *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557 (Fed. Cir. 1996). However, this does not mean that summary judgment is inappropriate where there is no genuine issue of material fact. *Id.*

As to the patent infringement claim, BASF asserts that it is the exclusive licensee of the patents-in-suit and that the Unkels' conduct infringed at least one claim of each patent-in-suit. The threshold issue of BASF's standing, as licensee, to sue for infringement was previously decided by this court.[21] BASF must still make out a prima facie case of infringement. To do so, it must prove that the Unkels made, used, or sold a patented invention in violation of 35 U.S.C. § 271(a).

A patent infringement analysis consists of two steps. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384 (1996). The first step is to determine the meaning and scope of the patent claims asserted to be infringed and is a question of law. *Id.*; *see also, Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F. 3d 1298, 1306 (Fed. Cir. 2003). The second step is to compare "the properly construed claims to the device accused of infringing" and is a question of fact. *Markman*, 52 F.3d at 976; *Anchor Wall Systems*, 340 F. 3d at 1306. Where a patent is comprised of a series of claims, a party is liable for infringement if only a single claim of the patent was infringed. *Rival Co. v. Sunbeam Corp.*, 987 F. Supp. 1167, 1172 (W.D.Mo.1997), *aff'd*, 185 F. 3d 885 (Fed. Cir. 1999).

As to the first step of the infringement analysis– the meaning and scope of the patent– the court considers three sources: the claims, the specification, and the prosecution history. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991) (citing *Loctite Corp. v. Ultraseal,*

---

[21] *See* February 9, 2006 Memorandum Order [doc. 110].

*Ltd.,* 781 F.2d 861, 867 (Fed. Cir.1985)). The court may also use expert testimony to assist in the interpretation of claims. *Markman,* 52 F.3d at 979 (citing *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 631 (Fed. Cir. 1987).

Considering the claims, the specification, and the prosecution history,[22] as well as the testimony of Dr. Guy Zummo,[23] the court finds that CLEARFIELD rice technology is within the scope of patents-in-suit. The '100 Patent claims a process of cultivating rice plants that are resistant to herbicides as a result of an altered acetohydroxyacid synthase.[24] The '438 Patent claims rice plants that are resistant to inhibition by herbicides as a result of this alteration.[25] The '439 Patent also claims rice plants that are resistant to inhibition by herbicides as a result of this alteration.[26]

At the second step of the analysis, the plaintiffs satisfactorily demonstrate that the Unkels directly and literally infringed at least one claim of each patent. There is ample evidence in the record that the Unkels cultivated, planted and otherwise utilized CLEARFIELD rice in a manner which falls within the patents' claims.

Moreover, the Unkels offer no viable defense to the claims of patent infringement. In their reply brief, defendants discuss *ad nauseam* the defense of "prosecution laches." Prosecution laches is an equitable defense to "be applied only in egregious cases of misuse of the statutory patent

---

[22] Filed with Plaintiffs' Reply Brief [doc. 217].

[23] Transcript of November 15, 2005 Proceedings, pp. 57-64.

[24] *See* Plaintiff's Exhibit 1 (United States Patent) [doc. 188-16].

[25] *See* Plaintiffs' Exhibit 2 (United States Patent) [doc. 188-18].

[26] *See* Plaintiffs' Exhibit 3 (United States Patent) [doc. 188-20].

system." *Symbol Technologies, Inc. v. Lemelson Med., Educ. & Research Found.* 422 F.3d 1378, 1385 (Fed. Cir. 2005). Prosecution laches applies where there has been an "unreasonable and unexplained delay" in the prosecution of a patent. *See id.* In the instant matter, there is no evidence of an unreasonable or unexplained delay in the prosecution of Patents '100, '438, and '439. Moreover, nowhere in this extensive summary judgment record does there appear evidence that the defendants were prejudiced by a delay in the prosecution of these patents.

The defendants also raise the "first sale doctrine" as a defense to infringement. The first sale doctrine expresses the general rule that the patentee's sale of an article exhausts the patentee's rights therein. *See, e.g., Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 924 (Fed. Cir. 1984) (citations omitted). However, there is an exception to this general rule for a conditional sale or license. *B. Braun Medical, Inc. v. Abbott Laboratories,* 124 F.3d 1419, 1426 (Fed. Cir. 1997) "This exhaustion doctrine, however, does not apply to an expressly conditional sale or license. In such a transaction, it is more reasonable to infer that the parties negotiated a price that reflects only the value of the 'use' rights conferred by the patentee.). As the sale of CLEARFIELD is subject to a Stewardship Agreement, the defendants' argument is without merit.

Finally, the defendants assert that the MGI patents are invalid because (1) there is no evidence that MGI ever produced any rice and (2) MGI is guilty of "double patenting." Not only are these assertion meritless, but they contravene the court's previous rulings. In the July 25, 2006 Memorandum Ruling, the court held:

> The defendants' conclusory statement that the three Patents-in-suit do not relate to CL161 is not supported by the evidence. This court has also previously found that these claims relate to these three Patents.... This court has previously concluded that [MGI] is a properly named involuntary plaintiff in this action and that [BASF] as

> exclusive licensees to the Patents-in-suit, [has] the right to pursue claims for patent infringement.... *Counsel for the defendants is cautioned to avoid filing meritless motions.*[27]

The above ruling cites to the court's May 18, 2006 Order and Written Reasons, which states:

> The plaintiffs have provided sufficient evidence to support its assertion that it has acquired an exclusive right and license to make, use, sell, or import products and methods covered by, and that its CLEARFIELD technology falls within the protection of [the '100 Patent, the '438 Patent, and the '439 Patent].[28]

Thus, the issue of plaintiffs standing to sue for infringement and the validity and scope of the patents has already been adjudicated. The court will not entertain defendants' efforts to surreptitiously reargue these issues. On September 13, 2006, defendants' Rule 56(f) motion was granted, allowing them additional time to depose MGI.[29] Considering these "new" arguments, it is now clear that defendants' motion was interposed merely to delay and increase the cost of this litigation. Defendants will therefore be ordered to show cause why they should not be sanctioned.

Accordingly, summary judgment will be entered against Michael W. Unkel and Michael T. Unkel on plaintiffs' patent infringement claim.[30]

---

[27] July 25, 2006 Memorandum Ruling 4-5 [doc.179] (emphasis added).

[28] May 18, 2006 Order and Written Reasons 2.

[29] September 13, 2006 Order [doc. 229].

[30] Subsequent to filing their motion for summary judgment, plaintiffs amended their complaint to add Michael T. Unkel Farms, Inc. ("MTU Farms") as a defendant. Plaintiffs' Second Amended Complaint [doc. 212]. Defendants are hereby given notice that the court will consider *sua sponte* whether summary judgment should be entered against MTU Farms on the patent infringement claim. *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436 (5th Cir. 1992) ("A district court may grant a motion for summary judgment *sua sponte*, provided that it gives proper notice to the adverse party.").

*PVPA Infringement*

The PVPA protects the rights of the owner of a protected plant variety from certain enumerated infringing acts. 7 U.S.C. § 2541(a). These enumerated acts include: selling, transferring, importing/exporting, using, or dispensing the protected variety. *Id.* It is also infringement to "instigate or actively induce performance of any of the foregoing acts." *Id.*

As in the instant case, where the alleged infringer committed any one of these acts prior the issuance of the PVPA certificate, the court is precluded from awarding damages if it finds the infringer had "innocent intentions." 7 U.S.C. § 2564(d). In addition, the PVPA contains an exemption which allows individuals to save crop seed for farming purposes. 7 U.S.C. § 2543 ("[I]t shall not infringe any right hereunder for a person to save seed produced by the person from seed obtained, or descended from seed obtained, by authority of the owner of the variety for seeding purposes and use such saved seed in the production of a crop for use on the farm of the person, or for sale as provided in this section.").

Plaintiffs allege that defendants knowingly committed a variety of infringing acts under the PVPA with respect to CLEARFIELD variety CL161.[31] Indeed, the evidence shows that, among other things, M.W. and M.T. used, transferred possession of, and instigated the sale of CLEARFIELD in a manner that infringed the rights of LSU, as owner of the PVPA-in-suit, and

---

[31] Defendants assert that there is no proof that CL161 is protected by the PVPA. They also argue that LSU Agricultural Center, the owner of the PVPA certificate, is not a party to this lawsuit and that BASF lacks standing to sue for infringement. Again, these issues have already been litigated. The court found that plaintiffs have standing to sue for PVPA infringement and that CL161 falls withing the protection of the PVPA-in-suit. With respect to standing, see February 9, 2006 Memorandum Order; February 13, 2006 Memorandum Order [doc, 112]; November 16, 2006 Transcript (Closing and Ruling), p. 20. With regard to the whether CL161 is covered by the certificate, see May 18, 2006 Order and Written Reasons 2.

BASF, as licensee. The only issue which remains is whether the Unkel's have a valid defense to the infringement claim. That is, did the Unkels act with innocent intentions prior to the issuance of the certificate and/or did their actions fall within the seed saving exception?

In the July 24, 2006 Memorandum Ruling, the court found that "defendants have not asserted, nor have they produced any evidence, that their intentions were innocent."[32] This finding was based upon the following facts in evidence:

> Uncontroverted summary judgment evidence demonstrates that the defendants attended seminars sponsored by BASF and agreed to have Kinder Canal Company serve as a retailer of CLEARFIELD rice seed and to act as a steward of the technology. Documents were posted in the store which described the PVPA and patent protection. These notices stated that the seed could not be saved or propagated.[33]

Since this ruling, defendants have presented no additional evidence which proves they acted innocently in growing CLEARFIELD prior to the issuance of the PVPA certificate at issue. As such, the court is not precluded from finding defendants liable for pre-issuance infringement.

With regard to the seed saving or "crop exception," § 2543 permits a farmer to sell seed that he has saved for the purpose of replanting his own acreage. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 191, 115 S.Ct. 788, 795 (1995). The statute requires that the seed be obtained "by authority of the owner of the variety." 7 U.S.C. § 2543. This means "the farmer must have obtained that PVPA seed by authority of the PVPA certificate holder and with the intent to grow a crop." *Asgrow Seed Co. v. Winterboer*, 982 F.2d 486, 489 (Fed. Cir. 1992), *rev'd on other grounds*, 513

---

[32] July 24, 2006 Memorandum Ruling 7 [doc. 181].

[33] *Id.* at 7-8.

11

U.S. 179, 115 S.Ct. 788 (1995).

Neither the statute nor the Court's *Asgrow* decision define the phrase "by authority of the owner." As such, the court shall give this phrase its ordinary or natural meaning. *FDIC. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 1001 (1994). The court's interpretation is also guided by reference to patent law, as the PVPA was enacted to give "patent-like protection to novel varieties of sexually reproduced plant varieties." *Asgrow Seed*, 513 U.S. at 181, 115 S.Ct. at 790; *see also J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124, 138, 122 S.Ct. 593, 602 (2001) (discussing the history of the PVPA).

Implicit in the phrase "authority of the owner," is the owner's authority to contractually condition the sale of the protected seed. In the instant case, the authority to sell or save seeds pursuant to § 2543 is therefore limited by the BASF Stewardship Program. M.W., M.T., and James T. Manuel either knew of or were contractually bound to the provisions of Stewardship Program.[34] Because there is no evidence that BASF granted permission to sell or save CLEARFIELD seed, § 2543 is inapplicable.

Accordingly, summary judgment will be entered against Michael W. Unkel and Michael T. Unkel on plaintiffs' PVPA infringement claim.[35]

*State Law Conversion*

Plaintiffs assert that defendants are liable for conversion under Louisiana law for "knowingly

---

[34] Plaintiffs' Exhibit 78 (Manuel Stewardship Agreement) [doc. 217-3].

[35] Defendants are hereby given notice that the court will consider *sua sponte* whether summary judgment should also be entered against MTU Farms on the patent infringement claim. *See* Note 30, *supra*.

12

and willfully depriving Plaintiffs of their rights" in CLEARFIELD. Defendants argue that plaintiffs' claim has prescribed and that M.W. and M.T. lawfully purchased CLEARFIELD. Both parties overlook two important issues.

First is the issue of whether federal patent law preempts a patentee's right to recover for the tort of conversion under Louisiana law. In *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, the Federal Circuit indicated that conflict preemption, rather than field preemption, is the more precise analysis to use in determining whether a state law cause of action is preempted. 153 F.3d 1318, 1334-35 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir.1999). *Hunter Douglas* set forth the conflict preemption analysis as follows:

> To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. *Id.* at 1335.

Here, the Unkel's allegedly tortious conduct was planting, cultivating, storing, and otherwise using CLEARFIELD rice seed and related technology. As explained in detail above, this very same conduct infringes plaintiffs' patents. The conduct that forms the basis of plaintiffs' tort action is therefore clearly protected by federal patent law and plaintiffs' conversion claim is preempted.

Even if plaintiffs' tort claim were not preempted, the question arises whether intellectual property can be converted under Louisiana law. "A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is

13

transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel. *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857 (La.1998) (citations omitted).

"Chattel" is defined as "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." BLACK'S LAW DICTIONARY (8th ed. 2004). In Louisiana, such property is deemed "corporeal movable" property. LA. CIV. CODE ART. 471. Thus, the issue is whether incorporeal or intangible property can be the subject of a conversion action.

The rule has developed that intangible property can be converted if the right is embodied in or merged into a document. *See* RESTATEMENT (SECOND) OF TORTS § 242 (1965). This rule is commonly thought to apply to intangibles, such as stock certificates and bonds, which represent valuable intangible property rights. However, recently, the Ninth Circuit found that an internet domain name is a form of intangible property merged with a document and therefore susceptible of conversion. *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003).

The Louisiana courts have not read this rule so expansively. The courts of this state have limited conversion to those intangible property rights which are traditionally merged into or identified with some document. The court therefore finds that plaintiffs' conversion claim is outside the scope of Louisiana conversion law.

Accordingly, plaintiffs' motion for summary judgment on their state law conversion claim will be denied.

14

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6 day of November, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT COURT